APPEALS OF ARTHUR H. LEONARD, CHARLES M. LEONARD, AND FLETCHER L. BARROWS.

Docket Nos. 3156, 3157, 3158.   Decided September 30, 1926.

A partnership sold a part of its assets and divided the balance among the partners upon the basis of values placed upon them by accountants, which values were less than book values. *Held,* that the evidence does not show that the partners sustained a loss as a result of the division of the assets among them.

*Charles P. Choate, Esq.,* for the petitioners.
*Thomas P. Dudley, Jr., Esq.,* for the Commissioner.

These appeals are from determinations of deficiencies in income tax for the years 1918 and 1919 as follows:

| Docket No. | Year. | Deficiency asserted. |
|---|---|---|
| 3156 | 1918 | $3, 454. 09 |
|  | 1919 | 23, 941. 62 |
| 3157 | 1918 | 3, 321. 39 |
|  | 1919 | 27, 834. 30 |
| 3158 | 1918 | 982. 37 |
|  | 1919 | 6, 518. 45 |

Only a portion of these amounts is in controversy. The taxpayers allege error on the part of the Commissioner (1) in the computation of allowable depreciation on patterns, lasts, and dies for the years 1918 and 1919, and (2) in the disallowance of the deduction from gross income of certain dissolution losses.

The taxpayers were members of a partnership, under the firm name of Leonard & Barrows, engaged in the manufacture and sale of men's and boy's boots and shoes, with plants at Middleboro, Mass., and Belfast, Me. The partnership had been in existence for many years prior to 1913. By written agreement dated December 31, 1919, the partnership was dissolved as of that date. This agreement provided " for the liquidation of their business [the partners'] by a division of its assets between them."

The dissolution was precipitated by a demand made by letter from Arthur H. Leonard to his partners, dated January 14, 1919, exercising his right, in accordance with the articles of the copartnership, to terminate the partnership at the end of the year. He insisted on acquiring the Belfast plant so that he might thereafter conduct it as his own individual business. He had consulted his lawyer about this and his partners employed their lawyers to oppose dissolution on that basis. Arthur H. Leonard also employed his

accountant and the other two partners employed their accountant to make the determinations of values at which the assets were to be transferred to the several partners. After numerous conferences between counsel, it was finally agreed that the Belfast plant should be transferred to Arthur H. Leonard and that the two accountants should work out the capital interest of each partner, credit him therewith, debit him with assets taken over by him, and adjust the balances in cash.

To work out the capital interest of the partners it was necessary to value the assets. The values were determined by the two accountants after considerable negotiation and trading back and forth between Arthur H. Leonard and his partners. Some of the assets were sold to outsiders and other assets, including the two plants, were transferred to the partners at agreed values. The accountants wrote down or set up reserves against various assets to reduce them to liquidating values. They set up a reserve for purchase discount, a reserve for sales discount, an item of accrued expenses for fees of auditors and lawyers in connection with the dissolution, a reduction in the value of certain securities, a reserve for bad debts, and an adjustment for prepaid taxes.

In computing the firm's net income for 1919, the partners deducted as losses the amounts by which the accountants reduced the book values of the items referred to above to liquidating values. Among the amounts thus deducted were certain amounts disallowed as deductions by the Commissioner as follows:

| | |
|---|---:|
| 1. Reserve for purchase discount | $11,308.41 |
| 2. Reserve for sales discount | 38,853.83 |
| 3. Accrued expenses | 4,000.00 |
| 4. Write-down on securities | 2,816.00 |
| 5. Addition to reserve for bad debts | 700.00 |
| 6. Adjustment for prepaid taxes | 3,512.51 |
| | 61,190.75 |
| Less: | |
| Reserve for bad debts transferred to selling expense | 967.99 |
| Amount in dispute | 60,222.76 |

The reserve for purchase discount included the discounts on purchases allowable for cash payments within the period of credit and was used to reduce inventory accordingly. The reserve for sales discount included similar discounts allowable to customers of the partnership. The item of accrued expenses represented an estimate of legal and accounting expenses in connection with the dissolution, the exact amount of which had not been determined at the close of

1919. The write-down on securities represented the difference between the cost of certain securities and their market value at December 31, 1919. The addition to reserve for bad debts represented an estimate of the accounts receivable which would prove worthless. The adjustment for prepaid taxes represented an amount which appeared as such on the partnership's books of account in 1919.

The liquidation of the affairs of the partnership proceeded in 1920. In that year payments in cash, aggregating $18,942.16, were made to Arthur H. Leonard by the other two partners who had taken charge of the liquidation of the partnership.

In the computation of allowable depreciation upon patterns, lasts, and dies for the years 1918 and 1919, the Commissioner did not allow any deduction for depreciation in respect of patterns, lasts, and dies purchased during the years 1917, 1918, and 1919. Depreciation was sustained upon these assets at the rate of 33⅓ per cent annually.

The partnership of which the taxpayers were members kept its books of account upon the accrual basis.

OPINION.

Smith: The taxpayers allege two errors on the part of the Commissioner in the determination of tax liability for the years 1918 and 1919:

First, that he made an error in his mathematical calculation of the depreciation deductible from the gross income of the partnership for the years 1918 and 1919 upon patterns, lasts, and dies purchased during the years 1917, 1918, and 1919;

Secondly, that he disallowed as deductions from gross income certain losses alleged to have been suffered by the taxpayers as a result of the dissolution of the partnership.

Upon the first point the taxpayers allege that the Commissioner allowed depreciation upon patterns, lasts, and dies on hand on January 1, 1917, at proper rates for 1918 and 1919, but that he failed to allow any deduction for depreciation on patterns, lasts, and dies acquired during the years 1917, 1918, and 1919 for the two taxable years under review, and that depreciation was sustained upon such assets at the rate of 33⅓ per cent per annum. The Board finds from the evidence that depreciation was sustained upon these patterns as claimed by the taxpayers.

The second point in issue is stated by counsel for the taxpayers as follows:

 \*   \*   \*   It arises out of the Unit's refusal to allow the partners to deduct the losses they sustained when the accountants at the time of dissolution on Decem-

ber 31, 1919, wrote down the book values to liquidating values by setting up the various reserves, charging up the dissolution expenses and writing down securities. If the taxpayers prevail on this issue the net income for 1919 will be * * * reduced by $60,222.76.

He then states that the Commissioner claimed that, because upon dissolution the Belfast plant was transferred to Arthur H. Leonard and the Middleboro plant was transferred to his partners, it was a distribution in kind within the meaning of article 1570 of Regulations 45. and that no profit or loss can be predicated upon such a distribution. He contends, however, that article 1570 is inconsistent with and not authorized by section 202 of the Revenue Act of 1918, and also that the transfer of the assets to the partners was not a distribution in kind but amounted to a sale of the two plants by the firm to the respective partners.

The agreement of dissolution dated December 31, 1919, provided in part:

The business of the copartnership shall be liquidated by Charles M. Leonard and Fletcher L. Barrows in accordance with the methods hereinafter set forth. For the purpose of such liquidation, the books of the copartnership as now made up shall be deemed to be accurate, except as modified or corrected by the schedule hereto annexed, marked 'A', and shall govern the amounts payable to the several partners. The books shall be made up at the conclusion of the present run in the usual manner, with the exception that all new run merchandise, new run payrolls, and new run expenses shall be entered on the books up to and including December 31, 1919, and the liabilities for the same shown in the books, but said new run property shall not include any new run lasts, dies, patterns or blocks which were not used in completing the old run, and the profits thus determined shall be divided between the partners at the time and in the manner which follow.

*        *        *        *        *        *        *

V. FINAL DIVISION OF PROPERTY IN LIQUIDATION.

The present old run shall be finished in each factory, and the goods shipped therefrom to fulfill the present old run orders. The bills for the same shall be sent out in the name of Leonard & Barrows, and payments therefore made to Leonard & Barrows in Liquidation. The expenses of finishing the said old run shall be provided for out of the partnership assets, and any advances necessary for such purpose shall be made to said Arthur H. Leonard, Charles M. Leonard, and Fletcher L. Barrows respectively. The Liberty bonds standing to the account of the Belfast plant shall be taken over by Arthur H. Leonard at the amount thereof, and the Liberty bonds standing to the account of the Middleboro plant shall be taken over by said Charles M. Leonard and Fletcher L. Barrows at the amount thereof. The shares of the stock in the United Shoe Machinery Company shall be sold to the best advantage, and the proceeds of such sales applied in payment of the liabilities of the copartnership. * * *

Granted that the conveyance of the Belfast plant to Arthur H. Leonard and the conveyance of the Middleboro plant to Charles M. Leonard and Fletcher L. Barrows were sales of property from which

the partners might individually derive a profit or a loss, we are not in possession of any information which enables us to determine whether any of the taxpayers sustained any gain or loss in respect of such conveyances; neither are we in possession of any information which enables us to determine whether any loss was sustained by the partnership upon the liquidation of the several assets in the manner in which that liquidation was carried out. It was contemplated by all parties that the two liquidators, Charles M. Leonard and Fletcher L. Barrows, should wind up the affairs of the partnership and distribute any proceeds which might be received upon the accounts of the partnership in the year 1920. The evidence all goes to show that the accounts receivable of the partnership were collected and the accounts payable were liquidated and that distribution was made among the several partners in accordance with the dissolution agreement. Whether the liquidators collected in 1920 the full amount of the accounts receivable on December 31, 1919, is not in evidence. Upon the evidence of record, we must determine whether the reserves and accrued expenses claimed as deductions from gross income of the year 1919, amounting to $60,222.76, are legal deductions from gross income in the determination of the profits of the partnership for the calendar year 1919.

The reserve for purchase discount represents an estimate by the accountants of the amount of discounts which might be taken by the partnership at the time that it liquidated its accounts payable. The reserve for sales discount likewise represents an amount which the accountants estimated might be taken by creditors when they paid the amounts owed to the partnership on December 31, 1919. Whether the discounts provided for by these reserves were cash discounts or trade discounts is not apparent from the record. Apparently the partnership had never before set up reserves for discounts. Accounts payable and accounts receivable standing upon the books of the partnership at January 1, 1919, were not offset by any reserves for discount.

The reason why inventories and accounts receivable and accounts payable are taken into account in determining the profits of a business for a given year is that only in that way can the profits be accurately determined. But for such purpose it is of the utmost importance that the inventories and accounts receivable and accounts payable be placed upon the same basis both at the beginning and at the close of each taxable period. Relative to the reserve for purchase discount ($11,308.41), a certified public accountant who appeared as a witness for the taxpayers was asked the question:

Q. From the standpoint of computing the gain, profit and loss or income of the partnership was it correct to charge these against the inventory?

A. Absolutely not; it was not done as a trading charge, although the individuals reported that in their tax originally. In my opinion, absolutely not allowed as a trade receipt against partnership income. This was simply a part of the dissolution procedure. I think, if I interpret Mr. Dudley's [Commissioner's counsel] explanation that we could not consider this as a loss, that that could not be taken under the circumstances, that [but] that is not exactly the point; the taxpayer has never tried to handle it in that way. The taxpayer, as I understand, did show that on the return; but this could have been handled in another way, and I think that these accountants simply got together and said "we will agree on this" and show the account in this way and that is why there was a write down. * * *

Q. What would you consider it?

A. I would believe it was a loss in the disposition of the assets; that merchandise was inventoried in order to dispose of it after they reached the correct amount, and they wrote it down to find a basic price to the partners.

Q. Now, with respect to the question of items of sales discount of $38,853.83. Do you know how that was arrived at?

A. Exactly the same way, agreed by the two conferring accountants. They worked this out in their conferences until they got the account to where it was acceptable by them at this reduced value.

This Board has held in *Appeal of Thatcher Medicine Co.*, 3 B. T. A. 154, that reserves for cash discounts which may be taken in the future are contingent reserves and are not allowable deductions from gross income. From the standpoint of determining the correct profits of the partnership for the year 1919, we are of the opinion that the reserves for discounts were not proper deductions.

The item of " accrued expenses " of $4,000 represents the estimate made by the accountants of the portion of the charges which might be made by lawyers and accountants for work performed during the year 1919 in connection with the dissolution of the partnership. In our opinion such amounts were not " ordinary and necessary expenses " and are not deductible from gross income.

The " write-down on securities " in the amount of $2,816 simply represented the shrinkage in the value of certain securities owned by the partnership. The statute provides for the deduction of losses sustained. These securities had not been sold or disposed of at December 31, 1919, and the partnership had sustained no deductible loss in respect of them.

The " addition to reserve for bad debts " appears to have been only an estimate by the accountants of the percentage of the accounts receivable which would prove to be worthless. The statute (Revenue Act of 1918) permits the deduction of debts ascertained to be worthless and charged off within the year but not of any addition to reserve for bad debts.

The " adjustment for prepaid taxes " appears to have been a deduction made in 1919 for taxes of some character paid in a prior year. These were presumably real estate taxes, since these are the

only taxes that the partnership was required to pay in advance. We think that this item was a proper deduction from the gross income of.the partnership.

From the foregoing, we are of the opinion that of the items in dispute only that for " adjustment for prepaid taxes," in the amount of $3,512.51, was a proper deduction from gross income in computing the income of the partnership for the year 1919. This, in our opinion, is the only item which could have been deducted if the partnership had not been dissolved at the close of 1919.

On behalf of the taxpayers, it is contended that the assets of the partnership distributed to the several partners were taken up upon the books of the partners at the values determined by the accountants representing the several partners. We are of the opinion, however, that this is not determinative of a gain or loss in respect of such assets. If the individual partner received from the liquidators in 1920, from the collection by them of accounts receivable, a less amount than his proportionate share of the accounts receivable as they stood on the partnership books at December 31, 1919, before there was any write-down of such accounts by the two accountants, that partner undoubtedly realized a loss from such collection. But such loss was not sustained in 1919.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*